[Civ. No. 2183.   Third Appellate District.—March 26, 1921.]

## A. J. SILVA, by His Guardian Ad Litem, etc., Appellant, v. ANTONE ANGELO, Respondent.

[1] LEASES—EXPENSE OF THRESHING AND BALING CROPS—INTENTION OF PARTIES—EVIDENCE.—Where it cannot be determined upon or from the face of a lease of certain real property to be farmed on shares how or by whom the expense for threshing and baling the crops shall be borne, it is requisite, to ascertain whether it was the intention and understanding of the parties that the lessee should bear the whole of the expense or that such expense should be borne in equal shares by both the lessee and the lessor, either to prove what was the "usual course and custom of the neighborhood," if such course or custom would throw any light upon such intention, or to take the testimony of the oral contemporaneous negotiations eventuating in the written lease, assuming that such negotiations would disclose such intention.

[2] ID.—REFORMATION—ISSUES—CUSTOM—BURDEN OF PROOF.—Where, in an action by the lessor to secure the reformation of such lease so as to require the lessee to bear the whole of the expense of harvesting and baling the crop, the lessee pleads the custom of the neighborhood as to the division of crops and the division of the expenses equally, the burden of proving such custom is upon the latter.

---

1. Admissibility of parol evidence to add to or vary writing, notes, 56 **Am. St. Rep.** 659; 17 **L. R. A.** 270.

[3] ID.—DIVISION OF EXPENSES—EVIDENCE—FINDINGS—JUDGMENT.—In such action, although the defendant failed to sustain his claim as to the custom of the neighborhood, he having testified that it was explicitly agreed and distinctly understood between him and the plaintiff that each should bear an equal share of the cost of threshing and baling the crops, this testimony is competent under the issue joined upon the allegations of plaintiff's complaint and is sufficient to warrant the findings that the lease as signed and executed by plaintiff and defendant recited fully in detail all the terms and conditions as agreed upon and that plaintiff is indebted to defendant for paying the former's share of the cost of threshing and baling the crops during certain given years, and these findings were sufficient to support the judgment in conformity therewith, notwithstanding there is no direct finding that the agreement was that plaintiff and defendant were each to pay one-half of the expense of threshing and baling.

[4] ID.—MONEY JUDGMENT—COSTS.—Where the action on the part of plaintiff is not only for a decree reforming the lease, but also for a judgment against defendant for money due the former as his share of the proceeds of the sale by defendant of certain crops grown upon the demised premises, and the defendant does not deny in his answer that he is indebted to plaintiff in some amount, but he does not offer to pay to or deposit in court for plaintiff the amount due the latter, a money judgment in favor of plaintiff for a sum in excess of three hundred dollars carried costs as a matter of right.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

O. G. Hopkins for Appellant.

John C. March for Respondent.

HART, J.—The object of this action is: 1. To reform a certain lease, whereby the plaintiff demised certain real property to the defendant for the term of three years, commencing on the first day of November, 1916, and ending on the thirty-first day of October, 1919; 2. To recover judgment against the defendant for the sum of $983.80, alleged to be for moneys received by the defendant for plaintiff for the sale of hay and potatoes; 3. For an accounting by de-

fendant "for the balance of the crops and proceeds of said leased premises."

The lease concerning which the controversy involved herein arose, as it was executed by the parties hereto, is set out in full in the complaint.

Among other covenants and conditions of the said lease, which appears in the complaint as paragraph 2 of the first cause of action thereof, is the following: "The lessee further agrees that he will deliver and pay over to the said lessor, his executors, administrators or assigns, or to his or their order, annually, one-half (½) of all proceeds and crops produced on the said farm and premises aforesaid, of every nature, kind and description, in stack and sack, according to the usual course and custom of making such divisions in the neighborhood and in a seasonable time after said crops have been gathered and harvested."

The lease contains no specific provision as to how or by whom the expense for threshing the crops and baling the hay produced upon the demised premises should be borne— that is to say, whether such expense should be borne equally by the lessor and lessee or entirely by the latter—the plaintiff contending that the understanding was that the defendant· was to bear the whole of the expense incident to the harvesting of the crops and the baling of the hay produced upon the demised premises during the term of the lease. It is in this particular that the reformation of the lease is sought, and as the predicate for such relief, the complaint thus speaks: "That prior to the execution of the said lease and during the negotiations therefor and the terms thereof it was agreed between the said lessor and the said lessee, as one of the terms of said lease, that defendant, as such lessee, was to do, and he agreed to do, all the baling of hay and all the threshing of crops on said leased premises, during the term of said lease, at his expense, the said lessor to furnish one-half (½) of the wire for baling and one-half (½) of all sacks necessary; that subsequent thereto, plaintiff and defendant visited the law office of one O. G. Hopkins, at Sacramento, for the purpose of causing the terms of said agreement of lease to be put into written form and executing same; that by mutual mistake, neglect and inadvertence of both of said parties, they failed to recite to the said attorney that portion of the terms of said lease as hereinbefore

set out, and the said terms in detail were omitted therefrom on account of such neglect; that the omission of said terms from said lease was not discovered by said plaintiff until about the month of May, 1918; that at or about said time, the defendant refused to carry out said lease as agreed upon as aforesaid, and demanded of plaintiff that he pay for one-half (½) the cost of all baling and threshing and for one-half (½) of all wire and all sacks used during the years 1917 and 1918.''

The complaint then sets out (paragraph 5) an instrument in writing, as to which it is alleged: ''That at and before the making and executing of the said lease, this plaintiff and defendant intended and agreed that the said instrument and lease should mean, and the legal consequences thereof should be, as follows.'' The instrument thus set forth is, with the exception of the following · paragraph, precisely the same in its language and provisions as the lease subscribed and so executed by the parties: ''The lessee further agrees that during said term he will do all the baling of hay and all the threshing of crops on said premises at his own expense, the lessor agreeing to furnish one-half of the wire for baling and one-half of all the sacks necessary.''

It is then alleged that through the mutual mistake of plaintiff and defendant, ''the said lease contract hereinbefore alleged and set out did not and does not truly state or express the intention of said parties, and does not truly express or set out what were to be the legal consequences of said lease contract,'' in that it failed to state specifically that the lessee agreed that he would himself bear the whole of the expense necessary to be incurred for the threshing of the crops and the baling of the hay produced during the term of the lease on the demised premises.

The complaint further states that, on the 16th of November, 1918, the plaintiff demanded of defendant in writing that the latter consent to a reformation of the lease in the particular above specified, so that it would conform to the agreement made between them in said particular, but that defendant refused to give his consent to a change in the lease so demanded and still refuses to assent thereto.

Following the foregoing averments are allegations that the plaintiff has at all times complied with the provisions of the contract of lease required of him thereby and by the

actual agreement of the parties and that defendant has re-
ceived into his possession and retains certain moneys, ag-
gregating $983.80, which belong to the plaintiff as his share
of the proceeds of the sale by defendant of certain of the
products of the premises in question.

The defendant answered, specifically denying all the aver-
ments of the complaint, and also filed a cross-complaint, in
which it is alleged that the written contract of lease as exe-
cuted by the parties contained the full and complete
agreement between them and that the terms, conditions, and
covenants as set out in said contract of lease are therein
stated and expressed as the plaintiff and the defendant un-
derstood and agreed were to be the terms, etc., upon which
the premises were to be leased to defendant. It is alleged
in the cross-complaint that "the usual course and custom
of making such divisions in the neighborhood where said
premises are situated was, at the time of the executing of
said lease and now is, that the lessor and lessee shall each
pay one-half of the cost and expense of all baling of hay
and all threshing of crops grown on such leased premises,
and one-half of the wire for such baling and one-half of
all sacks necessary for such crops; that said defendant paid
the cost of all the baling of the hay and all the threshing
of the crops grown on said premises during the years 1917
and 1918, which amounted to the sum of $945.70; that one-
half of said sum . . . was paid by said defendant for and
on behalf of said plaintiff."

The total amount which it is alleged in the cross-complaint
defendant paid out for the use and benefit of plaintiff is
the sum of $586.75, for which sum, in addition to the prayer
that plaintiff be awarded nothing by reason of his action,
the defendant prays for judgment.

The court found (finding 2): That the parties hereto,
on the twenty-second day of December, 1916, entered into
the written agreement of lease which was executed by them
and which is set out in paragraph 2 of the first cause of
action of the complaint, and that under said lease defendant
took possession of the property described in said lease.

(Finding 3.) "That it is not true that at and before
the making and executing of the said lease, plaintiff and
defendant intended and agreed that the said instrument
and lease should mean, and the legal consequences thereof

should be, as set out in paragraph 5 of plaintiff's first cause of action in said complaint.''

(Finding 4.) ''That it is not true that, through the mutual mistake of plaintiff and defendant, the said lease contract set out in paragraph II in plaintiff's first cause of action in said complaint, did not and does not truly state or express the intention of the said parties, and does not truly express or set out what were to be the legal consequences of said legal contract.''

(Finding 5.) ''That the said lease, as signed and executed by the said plaintiff and defendant on the said twenty-second day of December, 1916, recited fully in detail all the terms and conditions as agreed upon by and between said parties.''

(Finding 6.) ''That during the first year of the lease, to wit, 1917, plaintiff furnished one-half (½) the wire for baling and one-half (½) the sacks necessary; that defendant furnished the other half and paid the expenses of baling and threshing, and accounted to the plaintiff for the balance due on the sale of crops for 1917, according to the terms of the lease.''

It was further found that the defendant, during the year 1918, sold hay and potatoes for the sum of $983.80, which sum defendant received ''to the use and benefit of plaintiff,'' and that no part of said sum has been paid to the last named by defendant; that, during the years 1917 and 1918, the defendant raised on the leased land certain crops, calves and hogs and let out for hire a team of horses belonging to plaintiff, all of which totaled in value the sum of $224.75, one-half of which belongs to plaintiff and of which no accounting to plaintiff has been made by defendant.

The court also found that the defendant, in the years 1917 and 1918, paid out for the benefit and use of plaintiff, under said lease, for the baling of hay, threshing of crops grown on the demised premises, and for other small items of expense, the total sum of $513, ''no part of which has been paid,'' and that defendant ''is entitled to have set off against the claims of plaintiff the said sum of $513,'' together with the sum of $50, which it was found was the reasonable value of services performed by defendant for plaintiff in taking care of certain horses belonging to the latter during the term of said lease, making a total of $563.

No specific finding was made as to the alleged "course and custom" in the neighborhood where the premises are situated with respect to the division of crops between the lessor and lessee of lands devoted to agricultural and other kindred purposes.

The court, as a conclusion of law, declared that plaintiff was entitled to a judgment for the sum of $533.85 "and that neither of said parties have judgment for costs herein."

Judgment was entered accordingly.

Plaintiff moved for a new trial, which was denied, and he brings the cause here on appeal from those portions of the judgment allowing defendant a setoff in the sum of $480.51 against the amount adjudged to be owing to him (plaintiff) by defendant and denying to plaintiff his costs of suit.

It will be observed, from the particular in which the plaintiff sought to secure a reformation of the lease, that the whole controversy between the parties here centers in this proposition, namely: Whether the plaintiff was, under the contract of lease, obligated to bear one-half of the expense of harvesting the crops and baling the hay raised on the demised premises during the term of the lease.

The plaintiff contends that from the language itself of the lease it is perfectly clear that the agreement was that the entire expense of baling the hay and of threshing the crop was to be borne by the defendant. We are unable to coincide with that view. Indeed, while the construction that the pleader may put upon a written instrument is not controlling or binding upon the courts, the position of the plaintiff is, singularly enough, directly at variance with his plea for a reformation of the lease so that the instrument would unquestionably show that the understanding was that the entire cost incident to the labor and the expense required for the threshing of the crops and the baling of the hay was to be borne by the defendant. The lease specifically provides that the lessor and the lessee shall each during the term of the lease "furnish one-half of all seed necessary to be used in planting and farming said land, and one-half of barley necessary for horse feed, and extra parts of machinery." There is no other provision in the instrument which contains an express stipulation as to how or by whom the other expenses of carrying on the farming business on

the demised land shall be paid or be borne. It is, therefore, very clear that a construction of the covenant in question cannot be materially aided by examining it in comparison with other provisions of the lease or the general context thereof. The contention of plaintiff is, however, that the language of said covenant, to wit: "the lessee further agrees that he will deliver and pay over to said lessor, . . . one-half of all proceeds and crops produced on the said premises, . . . of every nature, kind and description, in stack and sack, according to the usual course and custom of making such divisions in the neighborhood," etc., when read and considered by the light of the paragraph in the lease immediately following said language, can lead to no other rational conclusion than that the clear and essential implication is that the expense of threshing and baling was wholly to be paid by the defendant. The paragraph referred to reads: "The lessee further agrees that, after such division or divisions have been made annually, he will haul and transport the share of crop or crops due to the lessor to such shipping point as the lessor may direct, without cost to the lessor."

The argument supporting that proposition is that the transportation of the crops produced upon the premises, which, to facilitate the proper handling and shipping thereof, are required to be either baled or put in sacks, would require that they should be baled and placed in sacks, and, since the lessee is required to make delivery of the crops in that mode without cost to the lessor, it would follow that it was intended that he should, without cost to the lessor, put the crops in such condition as would admit of their proper delivery to the lessor at any point to be named by him. It is difficult to see wherein the latter provision can be of any assistance in the ascertainment of the intent of the parties upon the question whether the burden of the cost for threshing and baling should be upon the defendant alone or equally borne by the plaintiff and the defendant. The language of that paragraph, it will be noted, is that *after* the division or divisions are made as provided in the preceding paragraph of the instrument, the lessee must "haul and transport the share of crop or crops due to the lessor to such shipping point as the lessor may direct, without cost to the lessor." That by that provision of the lease

the duty of performing the service of such hauling and transportation free of all expense to the lessor is placed upon the lessee is a proposition so clear as to admit of no possible dispute; but it is equally clear that the requirement of the performance of that service by the lessee at his own exclusive expense is as far as the provision goes, either expressly or upon any reasonable construction. It is obvious that it throws absolutely no light upon the question whether the expense necessarily required to thresh the crops and bale the hay was to be wholly paid by the lessee or equally paid by both the lessor and the lessee, and this is true whether the provision is viewed alone or by itself or in comparison with the preceding paragraph of the lease. In a word, it is very clear that the covenant was intended to provide for the delivery into the possession of the lessor by the lessee the former's share of the crop *after* the division thereof had been effected, at the sole expense of the lessee, and, as stated, does not reflect any light upon the question whether the expense incident to the work of preparing the crop for such delivery should be borne solely by the lessee or in equal shares by both the parties to the lease. Thus, if there is to be extracted from the language of the lease itself an agreement, or an intention in the parties, that the whole of the expense of threshing and baling should be borne by the lessee, we are driven to a determination of that proposition from the language of the preceding paragraph of the instrument, and, as before declared, we cannot reasonably so construe said language as to bring about that result. The controlling language of said provision, in this connection, is that the lessee "will deliver over and pay to the said lessor" his share of the crop, "in stack and sack, *according to the usual course and custom of making such divisions in the neighborhood,*" etc. It is first to be noted that the word "bale" is not used in said provision, nor, for that matter, is there any express or direct provision anywhere in the lease requiring the crops to be "baled." Nor is there in the lease any express reference to the threshing of the crops. These circumstances we mention, however, not that we feel justified in holding that the threshing of the crops and the baling of such crops as are required thus to be preserved to be properly handled for commercial purposes are not required of the defendant under a fair and

reasonable construction of the lease considered in its entirety, but particularly because the absence of the word "bale" from that particular provision and the use of the word "stack" therein (the word "stack" as applied to farm crops, being commonly understood to refer to those crops which also may be "baled") would seem to limit the obligation of the lessee in the matter of delivering to the lessor his one-half share of the crops, to the delivery thereof in "stack" and "sack." In other words, for the reason suggested, it would appear from the face of the provision in question that, when the lessee should "deliver and pay over" to the lessor in "stack" and "sack" his share of all the crops produced on the premises, the former's duty to the lessor under the lease had been fully performed. But, even if the covenant in question were reasonably amenable to the construction that those crops susceptible to baling were to be delivered to plaintiff baled, still we find nothing in the language of said covenant from which it can be inferred that the expense of baling was to be entirely met by the defendant. If the contention is that the words, "according to the usual course and custom of making such divisions in the neighborhood," were understood and intended by the parties to mean, and were inserted in the lease to express such intention, that certain of the crops were to be delivered to the plaintiff baled, and that the defendant was to pay the whole of the cost of baling, as well as the cost of threshing, then, so far as the face of the instrument is concerned, the intention of the parties in that particular is still enveloped in obscurity, for nowhere does the lease by its express language enlighten us upon the nature and scope of the "usual course and custom in the neighborhood" where the premises are situated in the matter of the division of crops between the lessor and lessee of farming lands.

[1] Thus we have considered the lease for the purpose of showing that, upon or from its face, it cannot be determined whether the agreement was that the lessee was to bear the whole of the cost of threshing and baling the crops. And the result of this conclusion is that, since the lease itself does not expressly provide how or by whom the expense for threshing and baling shall be borne, and is indefinite and uncertain as to that proposition, it was requisite, to ascertain whether it was the intention and understanding

of the parties that the lessee should bear the whole of the expense of threshing and baling the crops produced upon the demised premises or that such expense should be borne in equal shares by both, either to prove what was the "usual course and custom in the neighborhood," if such course or custom would throw any light upon such intention, or to take testimony of the oral contemporaneous negotiations eventuating in the written lease, assuming that such negotiations would disclose such intention.

[2] As shown, the plaintiff asked for a reformation of the lease in the respect in which we are now considering it and the defendant pleaded the custom of the neighborhood as to the division of crops, and alleged that it was the custom in the neighborhood in which the leased premises are situated for the lessor and lessee of farm lands, where the compensation of the lessor for the use of the land was to be one-half of the crops produced on the premises demised, to bear the expense incidental to the threshing and the baling of the crops equally. Thus the plaintiff opened up inquiry into the oral negotiations immediately leading to the execution of the lease and the defendant likewise made the nature and scope of the alleged custom an issue. The burden of proving such custom was, therefore, upon the defendant.

The plaintiff introduced testimony to the effect that the express understanding was, before the written lease was drafted and subscribed by the parties, that the defendant was to pay the whole of the cost of threshing and baling, and that it was understood that a provision or covenant to that effect should be inserted in the written lease; that, through inadvertence or oversight, the plaintiff, at whose instance the lease was drawn by Mr. Hopkins, her attorney, neglected or failed to call the attention of her attorney to that particular part of the agreement, and that it was because of such inadvertence or neglect on her part that said provision was pretermitted from or not inserted in the lease.

[3] The defendant failed to sustain his claim, as set out in his cross-complaint, that it was the custom in the neighborhood in which the demised land is situated for the lessor and lessee in such a case as this to bear equally the cost of threshing and baling the crops. One witness testified that, while it was true that he himself had leased to a ten-

ant land situated in the neighborhood in which the land in question is situated upon an agreement, among others, that the cost of threshing and baling the crops should be borne in equal shares between them, he was unable to say that such a custom prevailed or existed in said neighborhood. Other witnesses called by the defendant could not say that such a custom existed or had ever existed in said neighborhood. But the defendant himself, replying to the testimony presented by plaintiff as to the parol contemporaneous agreement as to the expense of threshing and baling, testified that it was explicitly agreed and distinctly understood between him and the plaintiff that each should bear an equal share of the cost of threshing and baling the crops. This testimony was, of course, competent under the issue joined upon the allegations of the complaint looking to a reformation of the lease, and, having been accepted by the court as disclosing the truth of the matter to which it related, was sufficient to warrant the finding that "the said lease, as signed and executed by the said plaintiff and defendant on the said twenty-second day of December, 1916, recited fully in detail all the terms and conditions as agreed upon by and between said parties," and the further finding that plaintiff was indebted to defendant for paying his (plaintiff's) share of the cost of threshing and baling the crops during the years 1917 and 1918. And that these findings support the judgment, notwithstanding that there is no direct finding that the agreement was that the lessor and the lessee were each to pay one-half of the expense of threshing and baling, there can be no doubt. Said findings necessarily include or, at least, imply the finding of such an agreement. The rule is that the findings must be so construed as to support the judgment, if reasonably it can be done, and upon such construction of the findings here as a whole, it is manifest that, as stated, the judgment is sufficiently supported.

[4] We think, however, that the court erred by its refusal to award plaintiff her costs. The action on the part of plaintiff was not only for a decree reforming the lease, but also for a money judgment against defendant for money due the former as his share of the proceeds of the sale by defendant of certain crops produced on the premises in question. While the defendant did not deny in his answer

that he was indebted to plaintiff in some amount, but, on the contrary, admitted that certain products of the farm had been sold by him and that the proceeds of such sale were in his possession in the form of a draft, he did not offer to pay to or deposit in court for plaintiff the amount due the latter, even upon the basis of the counterclaim he set up against the plaintiff. The judgment for plaintiff was for the sum of $533.85, and such judgment carried costs as a matter "of course," which means as a matter of right. (Code Civ. Proc., sec. 1022, subd. 3; *Stoddard* v. *Treadwell et al.,* 29 Cal. 281; *Schmidt* v. *Klotz,* 130 Cal. 223, [62 Pac. 470]; *Hoyt* v. *Hart,* 149 Cal. 722, [87 Pac. 569]; *F. A. Hihn Co.* v. *City of Santa Cruz,* 24 Cal. App. 365, [141 Pac. 391]; *Peake* v. *Harris,* 48 Cal. App. 363, [192 Pac. 311, 317].)

The judgment, in so far as it denies to plaintiff his costs, is reversed, with directions to the court below to allow plaintiff his costs. In all other respects the judgment is affirmed.

Prewett, P. J., *pro tem.,* and Burnett, J., concurred.