[Civ. No. 10654.   Third Dist.   Oct. 28, 1963.]

GEORGE COX, Plaintiff and Respondent, v. JAMES PIT-HOUD, Defendant and Appellant.

Tindall & Tindall and C. E. Tindall for Defendant and Appellant.

Fred P. Tuttle III for Plaintiff and Respondent.

SCHOTTKY, J.—Plaintiff George Cox commenced an action against defendant James Pithoud to recover the sum of $1,064 for loss of and injury to cattle which had been delivered to defendant for pasturing. The defendant filed an answer and cross-complaint denying any liability or neglect on his part and also praying for $45 balance due on pasturage.

The court found in favor of plaintiff and judgment was entered awarding plaintiff the sum of $375 on his complaint, and awarding defendant judgment in the sum of $30 on his cross-complaint. Defendant's motion for a new trial was

denied, and he has appealed from the judgment.

It appears from the record that in July 1959, George Cox and James Pithoud entered into an oral agreement whereby Cox agreed to place 10 calves on irrigated pasture owned by Pithoud for a fee of $3.00 per head per month. Cox testified that Pithoud agreed to feed, water and maintain the calves. Pithoud said they would have sufficient feed. Cox testified that the calves were in good condition at the time they were delivered but that in October when he reclaimed the remaining calves they were in poor condition. There was no feed in the pasture. (Two calves had died before they were reclaimed —two afterward.) Cox said the cattle did not seem to be diseased in any way. In his opinion, they were starved. The testimony of Cox was corroborated by the testimony of Elgin Hopkins who testified that Pithoud agreed to transfer the calves from one pasture to the other and see that they had water. Hopkins asserted that the calves were in good condition when delivered and in very bad condition when reclaimed. In his opinion, they were not diseased but were starved—there was no grass in the pasture. Hopkins also testified that it was Pithoud's responsibility to transfer the calves from pasture to pasture because it was irrigated pasture.

The testimony on behalf of appellant Pithoud was, as often occurs, contrary to that of respondent. The gist of such testimony was that the calves were in very poor condition when they were brought in; that they looked wormy. Pithoud offered evidence that plenty of feed was available and that the cattle were rotated from pasture to pasture. The inference to be drawn from this testimony is that the calves were diseased and unhealthy when placed in pasture and that the loss was not the fault of Pithoud.

Pithoud also offered testimony to show that it was the custom for the owner of the cattle to watch for disease and generally watch the stock.

The trial court found: ''That the evidence showed that plaintiff and defendant entered into a contract for the pasturage of plaintiff's animals; that evidence showed that under the conditions of the contract defendant was not merely leasing pasture to plaintiff but actually was contracting as an agister or depositary of animals for hire. As such agister defendant was obligated under the law to provide livestock with suitable food and to treat them kindly; that having

accepted them under such circumstances defendant became obligated to exercise reasonable care for the safety of the animals; that defendant failed to exercise reasonable care and that plaintiff was damaged as a result thereof; that the damage to plaintiff amounted to $60.00 per head for the four animals that died, $30.00 per head for the three animals sold by plaintiff at auction, and $45.00 for the one animal sold separately.''

Appellant's first contention is that the trial court erred in awarding damages for the two calves that died while in appellant's possession because they died of disease and not because of negligence on the part of appellant. There was evidence that one calf was missing after the calves had been pastured a month. There was also evidence that appellant said ''that they had died, and he had to destroy them.'' Appellant could give no explanation as to the nature of the illness or ''anything that would indicate they were sick enough to die.'' The trial court could fairly infer that the two calves that died did so because of the lack of food. There was ample evidence that the calves were starved because of the inadequacy of the feed in the pasture available for them.

Appellant as an agister was liable for the loss of the stock because of his negligent failure to provide feed. (See *Mitchell* v. *Excelsior Water & Min. Co.*, 41 Cal.App. 240 [182 P. 326]; *Vaughn* v. *Bixby*, 24 Cal.App. 641 [142 P. 100].)

Generally, an agistment is a contract whereby a person called an agister has control of the animals and retains possession of the land. (*Williams* v. *Miller*, 68 Cal. 290 [9 P. 166].) An agister is required to exercise reasonable care to prevent injury or loss to the stock. (3 Cal.Jur.2d 263.) He is liable for loss of stock resulting from negligent failure to provide food, but no liability exists if there is sufficient feed to supply the cattle grazing thereon, and the death of the animals is caused other than by want of sufficient food. (See 3 Cal.Jur.2d 263, 264; 2 Am.Jur. 709.)

Appellant also contends that he was not liable because of the custom of stockmen in the vicinity which imposes a duty on the owner of cattle placed on pasture to determine when the stock should be removed. Appellant asserts it is the duty of the owner to watch his cattle. Whether such custom existed would be a question of fact (5 Williston on Contracts (3d ed.) § 662) which the one asserting the custom must prove. (*Silva* v. *Angelo*, 52 Cal.App. 75 [198 P. 56].)

However, in the case at bench the court found upon sufficient evidence that appellant was obligated under the law and under the agreement of the parties to take proper care of the calves and that he neglected to do so, and therefore even if there were the custom as contended by appellant, he would still be liable. Furthermore, the evidence that there was such a custom was very meager, and the court could well have determined that the burden of proof to establish it was not met.

As we view the case, it presented an issue of fact to the trial court, and appellant's argument is merely an attack on the weight of conflicting evidence. If, as found by the court, appellant was an agister he would be liable for any loss occasioned by his negligent failure to provide food. The court was entitled to believe the testimony produced by respondent that the pasture was inadequate and that the calves starved. Issues of fact are determined in the trial court, and where, as here, the evidence is conflicting, under familiar rules of appellate procedure we must uphold the judgment.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.