DANIEL E. CAMERON and ESTATE OF BARBARA CAMERON, BANK OF AMERICA NT&SA, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DANIEL E. CAMERON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cameron v. Commissioner
Docket Nos. 11111-79, 15083-80.
United States Tax Court
T.C. Memo 1982-259; 1982 Tax Ct. Memo LEXIS 488; 43 T.C.M. (CCH) 1341; T.C.M. (RIA) 82259; May 10, 1982. *488 Held, commercial feedlot operator is a farmer within the meaning of sec. 1.471-6(a), Income Tax Regs., and therefor is entitled to file its federal income tax return on the cash receipts and disbursements method of accounting. Maple Leaf Farms, Inc. v. Commissioner,64 T.C. 438 (1975), applied. Hi-Plains Enterprises, Inc. v. Commissioner,60 T.C. 158 (1973), affd. 496 F.2d 520 (10th Cir. 1974), followed. McGee Grigsby and Boyd J. Black, for the petitioners. James M. Kamman and Ricardo A. Cadenas, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiencies in petitioners' federal income tax: Sec. 6653(a) [1]
Docket No.
Tax Year
Deficiency
Addition to Tax
11111-79
1975
$ 477,213
none
15083-80
1976
264,288
$ 13,214
15083-80
1977
51,737
2,587
The parties have stipulated their agreement to be bound by the Court's Opinion, when rendered, in Rutherford v. Commissioner, Docket No. 9850-79, with respect to the depreciation issue involving the useful life of tile drainage facilities and concrete irrigation ditches. *489 Other concessions having been made by the parties, the only issue remaining for our decision is whether a commercial feedlot operator is a farmer for purposes of section 1.471-6(a), Income Tax Regs.
FINDINGS OF FACT Some of the facts of these consolidated cases are stipulated. The stipulation and its attached exhibits are incorporated herein by reference. Daniel E. Cameron was a resident of Brawley, California, when the petitions in these cases were filed. Barbara Cameron died September 20, 1975. Bank of America NT&SA is the executor of her estate. The executor maintained its principal office in California when the petitions in these cases were filed. At all relevant times Orita Land and Cattle Company ("Orita") was a partnership duly organized under California law. It was owned in equal shares by petitioner Daniel E. Cameron and Edgar C. Rutherford. Orita's fiscal year ended on April 30. It employed the cash receipts and disbursements method of accounting in keeping its financial books and in filing its federal income tax returns. Orita grew, harvested and sold crops. Orita owned and farmed 1,640 acres of irrigated farmland located near Brawley, California. The crops raised *490 included sugar beets, alfalfa, grain (milo, wheat, barley and/or maize) and cotton. In growing these crops Orita employed farm laborers and incurred expenses for such items as labor, seed, fertilizer, machine hire, water, pest control and harvesting. Orita also bought, raised and sold livestock. Orita's livestock operations included ownership and operation of a cattle feedlot located on 160 acres near Brawley, California. Most cattle which are sold to meat packers are raised in feedlots. Generally, the cattle are moved into a feedlot when the animals reach a weight of 300 to 600 pounds. The cattle are confined in a pen and fed a special ration which maximizes weight gain. Depending on market conditions, cattle are sold for slaughter when the animals reach a weight of 900 to 1,000 pounds. This feeding process takes several months to complete. Orita raised its own cattle and cattle owned by third parties in the feedlot operation. All cattle were treated the same in the feedlot operation. Cattle arriving at the feedlot were unloaded from trucks, counted, weighed, branded, vaccinated, tagged in the ear, doctored if sick and placed in pens. Once in the pens, the cattle were fed *491 a carefully-balanced feed ration until they gained sufficient weight for sale to meat packers. Orita made all decisions concerning feed rations and veterinary care for the cattle. Orita performed all activities concerning the physical care and feeding of the cattle during the growth process. Orita was liable under California law for losses arising from negligent failure to care for or to feed the cattle. Cattle fed in feedlots such as Orita's occasionally suffer from a tapeworm infection known as "measles." Meat from infected cattle is of lesser quality and may be partially condemned by government inspectors. When this occurs, the meat packer involved charged Orita for the loss or reduced value. Orita bore this charge-back from the meat packers even for cattle that did not belong to Orita. At times, Orita carried insurance coverage for such charge-backs. This insurance was carried on all cattle in the feedlot, not just on cattle belonging to Orita. Orita did not bill other owners directly for the cost of such insurance. Orita's feedlot has approximately 250 pens. Each pen held approximately 200 cattle. Orita's feedlot operation was conducted on a year-round basis. Crops such *492 as alfalfa and grain grown on Orita's land were harvested and fed to the cattle in the feedlot. Also, sugar beet pulp and tops and cotton by-products were used as feed. Fifteen to 25 percent of the feed used in the feedlot came from Orita's crops. Orita purchased the remainder of its feed requirements. Monthly "feed bills" charged feedlot customers for the cost of feed consumed (plus a markup), for extraordinary veterinary expenses, for a $ 0.02 per head per day "yardage fee" and for the California personal property "headday tax." If cattle died in the feedlot then Orita charged the owner for the feed bill incurred to the date of death. The cattle owners determined when and to whom their cattle were sold. Orita offered to broker the sale of customers' cattle to meat packers. Orita participated in approximately 50 percent of its customers' sales. Orita did not charge for this service. Orita owned the following number of cattle on the dates indicated: Date
Number of Cattle
April 30, 1975
13,500
April 30, 1976
10,820
April 30, 1977
9,290
Petitioner Daniel E. Cameron actively participated in the management of Orita's commercial feedlot operation. OPINION Respondent determined that the cash *493 receipts and disbursements method, consistently used by Orita for financial and income tax accounting purposes and by petitioners in filing their federal income tax returns, did not clearly reflect income because it failed to take substantial inventories into account. Section 471, section 1.471-1, Income Tax Regs. Respondent recomputed petitioners' income by the accrual method to account for these inventories. Petitioners assert that Orita was a farmer and therefore that they were entitled by section 1.471-6(a), Income Tax Regs., [2] to use the cash method regardless of inventories or potential distortion of income. [3] *494 We agree with petitioners. Definition of the term "farmer" for purposes of section 1.471-6(a), Income Tax Regs., is determined with reference to sections 1.61-4(d), 1.175-3, Income Tax Regs.Maple Leaf Farms, Inc. v. Commissioner,64 T.C. 438 (1975); *495 Hi-Plains Enterprises, Inc. v. Commissioner,60 T.C. 158 (1973), affd. 496 F.2d 520 (10th Cir. 1974). Section 1.61-4(d), Income Tax Regs. states: (d) Definition of "farm". As used in this section, the term "farm" embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms; also plantations, ranches, and all land used for farming operations. All individuals, partnerships, or corporations that cultivate, operate, or manage farms for gain or profit, either as owners or tenants, are designated as farmers. For more detailed rules with respect to the determination of whether or not an individual is engaged in farming, see sec. 1.175-3. For rules applicable to persons cultivating or operating a farm for recreation or pleasure, see sections 162 and 165, and the regulations thereunder. Section 1.175-3, Income Tax Regs. states: Sec. 1.175-3. Definition of "the business of farming."
The method described in section 175 is available only to a taxpayer engaged in "the business of farming." A taxpayer is engaged in the business of farming if he cultivates, operates, or manages a farm for gain or profit, either as owner or tenant. For the purpose *496 of section 175, a taxpayer who receives a rental (either in cash or in kind) which is based upon farm production is engaged in the business of farming. However, a taxpayer who receives a fixed rental (without reference to production) is engaged in the business of farming only if he participates to a material extent in the operation or management of the farm. A taxpayer engaged in forestry or the growing of timber is not thereby engaged in the business of farming. A person cultivating or operating a farm for recreation or pleasure rather than a profit is not engaged in the business of farming. For the purpose of this section, the term "farm" is used in its ordinary, accepted sense and includes stock, dairy, poultry, fish, fruit, and truck farms, and also plantations, ranches, ranges, and orchards. A fish farm is an area where fish are grown or raised, as opposed to merely caught or harvested; that is, an area where they are artificially fed, protected, cared for, etc. A taxpayer is engaged in "the business of farming" if he is a member of a partnership engaged in the business of farming. See paragraphs (a)(8)(i) and (c)(1)(iv) of sec. 1.702-1. See also sections 1.180-1(b), 1.182-2, Income Tax Regs. *497 "The breadth of the definition cannot be denied." Hi-Plains Enterprises, Inc. v. Commissioner,supra at 162. In Hi-Plains Enterprises, Inc. v. Commissioner,supra, we decided that a commercial feedlot operator such as Orita was a farmer for federal income tax purposes. [4] We find no relevant distinction between that case and this case. Respondent, however, asks us to reevaluate our Hi-Plains decision in light of the two fold test articulated in Maple Leaf Farms, Inc. v. Commissioner,supra.
After reviewing the relevant regulations [5] and cases [6] in Maple Leaf Farms, Inc. v. Commissioner,supra, we concluded that "the two essential elements" which must be satisfied to be a farmer for federal income tax purposes were (1) participation to a significant degree in the growing process and (2) bearance of a substantial risk *498 of loss from that process. 64 T.C. at 448. See also Duggar v. Commissioner,71 T.C. 147 (1978). We find that Orita satisfied this test.
First, Orita participated to a significant degree in the growth process as it was responsible for and conducted the feeding operation which fattened the cattle in preparation for sale to meat packers. Second, Orita bore a substantial risk of loss associated with the growth process. As the party responsible for the care and feeding of cattle belonging to other people, Orita owed the cattle owners a duty of reasonable care in feeding and maintaining the stock. Cox v. Pithoud,221 Cal. App.2d 571, 34 Cal. Rptr. 582 (Ct. App. 1963). Orita's risk was not limited to a potential loss of payment for the value of its services. If Orita had breached its duty of care *499 then it would have been liable for the lost stock value caused by its breach. Cox v. Pithoud,supra.Therefore, Orita bore a substantial risk of loss associated with the growth process. Orita also bore a risk associated with the sale price of the customers' cattle. Orita bore the risk of the tapeworm infection called "measles." It bore the charge-back imposed by meat packers for meat partially condemned for measles. Orita acquired insurance to cover this risk. Customers were not directly charged for the measles insurance premiums. Therefore, Orita bore the risk of loss associated with the possibility that cattle would contract measles during the growth process. These facts convince us that Orita satisfies the Maple Leaf Farms test and that it is a farmer for federal income tax purposes. Respondent, however, contends that Orita cannot be classified as a farmer because it did not bear the entire market risk associated with selling the cattle. Respondent emphasizes that the owner bore the risk of fluctuations in the market price for untainted meat and that the owner had to pay Orita for charges incurred to the date of death if cattle died during the course of the feedlot operation. *500 Respondent claims that these facts indicate that Orita provided services to farmers but was not itself a farmer. The facts highlighted by respondent do not change our opinion. These facts only indicate that the owner bore certain risks associated with the cattle growing operation. In Maple Leaf Farms, Inc. v. Commissioner,supra, we held that "[o]ne need not bear all the risks of loss to be considered a farmer." 64 T.C. at 451. Market risk was only one of several risks considered in that case. The key inquiry is whether Orita bore some substantial risks of loss from the growing process. And, as we found, Orita bore such risks. Ownership of the farm produce and bearing all the market risks are not prerequisites to classification as a farmer. In Maple Leaf Farms, Inc. v. Commissioner,supra, the obverse of the situation before us here was present: the taxpayer there was in the position of the cattle owners here, and the growers were in the position of the present petitioners. In that case we stated at page 448 that "[u]ndoubtedly the growers involved herein were 'farmers'," eventhough the growers did not own the ducks or bear any market uncertainties. Accord, Hi-Plains Enterprises, Inc. v. Commissioner,496 F.2d 520, 523 (10th Cir. 1974), *501 affg. 60 T.C. 158 (1973).
Therefore, we reject respondent's request that we no longer follow Hi-Plains Enterprises, Inc. v. Commissioner,supra. We find our decision in that case to be consistent with our decision in Maple Leaf Farms, Inc. v. Commissioner,supra.
We hold that Orita is a farmer. Petitioners are entitled by section 1.471-6(a), Income Tax Regs., to report the income and deductions from Orita's commercial feedlot operation pursuant to the cash receipts and disbursements method of accounting. In conclusion, we observe that for a long time the Commissioner has sought to persuade the courts to extricate him from the box in which he finds himself as a result of his inability to modify the option he has given farmers to choose between the cash and accrual basis of accounting. Section 1.471-6(a), Income Tax Regs. This case is but another chapter in that effort, for it would require us to indulge in word games sufficient to make Humpty Dumpty blush [7] to hold this farmer to be anything but a farmer. If respondent is dissatisfied with this result, his course of action is to persuade the legislature to open up a path from the corner into which he has historically painted himself. *502 He should not expect the courts to do it for him. See Tannenwald, J., concurring in Van Raden v. Commissioner,71 T.C. 1083, 1111 (1979). Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in issue.↩
2. Section 1.471-6. Inventories of livestock raisers and other farmers.
(a) A farmer may make his return upon an inventory method instead of the cash receipts and disbursements method. It is optional with the taxpayer which of these methods of accounting is used but, having elected one method, the option so exercised will be binding upon the taxpayer for the year for which the option is exercised and for subsequent years unless another method is authorized by the Commissioner as provided in paragraph (e) of sec. 1.446-1. ↩
3. The results of our inquiry concerning petitioners' right to enjoy the benefits granted to farmers by the regulations would be the same whether it focused on the partnership level or at the partner level because petitioner Daniel E. Cameron actively participated in the management of Orita's commercial feedlot operations and because Bank of America NT&SA is a party solely because the estate of Barbara Cameron filed a joint return with Daniel E. Cameron for 1975. For convenience we refer only to Orita's activities. We note that sec. 1.175-3, Income Tax Regs., states that "[a] taxpayer is engaged in 'the business of farming' if he is a member of a partnership engaged in the business of farming." We note also that sec. 1.61-4(d), Income Tax Regs., which provides the basic definitions of "farm" and "farming" for purposes of the income tax regulations, states that "[f]or more detailed rules with respect to the determination of whether or not an individual is engaged in farming, see sec. 1.175-3↩."
4. Respondent concedes that Orita is a farmer with respect to its crop raising activities and with respect to its cattle raising operations concerning the cattle it owns. Respondent only asserts that Orita's activities as a commercial feedlot operator do not constitute farming and that the cash method is inappropriate to the extent that it is applied to such activities.↩
5. We considered, inter alia, secs. 1.61-4(d), 1.175-3, Income Tax Regs.↩
6. We considered, inter alia, Hi-Plains Enterprises, Inc. v. Commissioner,60 T.C. 158 (1973), affd. 496 F.2d 520 (10th Cir. 1974); Maple v. Commissioner,440 F.2d 1055 (9th Cir. 1971), affg. a Memorandum Opinion of this Court; United States v. Chemell,243 F.2d 944 (5th Cir. 1957); Garth v. Commissioner,56 T.C. 610↩ (1971).
7. "'When I use a word', Humpty Dumpty said, in a rather scornful tone, 'it means just what I choose it to mean - neither more nor less'." Lewis Carroll, Through The Looking-Glass, ch. 6.↩