The **DIAMOND A CATTLE COMPANY**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 5202.

United States Court of Appeals
Tenth Circuit.

May 17, 1956.

Hugh C. Bickford, Washington, D. C. (M. T. Woods, Sioux Falls, S. D., Montgomery Dorsey and W. Clayton Carpenter, Denver, Colo., on the brief), for petitioner.

G. Guy Tadlock, Washington, D. C. (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Carolyn R. Just, Attorneys, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Arthur A. Armstrong, Los Angeles, Cal., amicus curiæ.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This case is here on petition for review of a decision of the Tax Court, under Sections 1141 and 1142 of the Internal Revenue Code of 1939 (now Internal Revenue Code of 1954, §§ 7482 and 7483, 26 U.S.C.A. §§ 7482, 7483). The taxpayer is a corporation which until mid-1945 was engaged in an extensive livestock business, with some farming incidental to the livestock operation. It and its predecessor had engaged in this business as a corporation since 1906, owning or leasing nearly one million acres of land in New Mexico and South Dakota. All of the stock of the company was acquired by Leon A. Williams on July 27, 1944, and the company began liquidation on August 14, 1945, by a transfer of all of its assets to the sole shareholder. Since that time the Diamond A Company has continued existence only for the purpose of winding up its affairs, including this controversy which began prior to the liquidation.

The dispute between the company and the Commissioner centered around the accounting method used by the company to report income, and around its right to a carryback to prior years of net operating losses and excess profit credits for the year 1945. Judge Rice of the Tax Court, assigned to take testimony and make the initial decision, made findings of fact and law in which he held that the company was on a cash basis and that the Commissioner was wrong in requiring accrual basis accounting for certain interest deductions and income from the sale of sheep which the company had reported on a cash basis. He also found the company was entitled to a carryback to 1943 of excess profits credits and operating losses incurred in 1945. His findings of fact and law were rejected by a majority of the Tax Court. Judge Rice dissented, one other judge joining him as to the carryback of excess profits credit and net operating loss.

The appeal presents two questions: (1) Was the petitioner on an accrual system of accounting and hence properly required to report all income on that basis? (2) Was petitioner entitled to a carryback of excess profits credits and its reported net operating loss for 1945?

Petitioner's accounts were consistently maintained during its active business existence in the same manner, which involved an inventory of its livestock based on the "unit-livestock pricing method" and other accounts normally employed in a double entry bookkeeping system including accounts receivable and payable. Overhead operating expenses were paid by cash and accounted for by means of a check register. No inventories of supplies were maintained. It was claimed by the Commissioner and a majority of the Tax Court so held that this was such a substantial deviation from the cash method as to constitute an adoption of the accrual method of accounting. The majority opinion is based upon the fact that the raising and selling of livestock was almost the sole source of income of petitioner and that the taxpayer inventoried its livestock at all times prior to and during the taxable years, and in so accounting accrued and reported large amounts of income not received, representing to some extent at least, the increase and growth of the animals in its herds prior to the sale of those particular animals. In short, said the court, "It has used an accrual method of accounting for its chief activity."

The Commissioner's contention that with respect to its major operations the taxpayer's return shows that it was at all times on an accrual basis was accepted by the majority of the court as the basis of its findings and determination. We think this conclusion is well supported by the record. It is without dispute that with a few exceptions taxpayer raised all of its cattle. It carried regular inventories of its cattle and regularly and each year carried cost inventories of such cattle. The cost inventory was arrived at by accruing a fixed sum each year as a cost of raising each critter. The cash basis must mean that credit must be taken for costs in the year in which they are paid, and likewise income must be reported in the year in which it is received. Inventories are the heart of the

accrual system of income accounting. The term "inventory" system is generally recognized as synonymous with the accrual system of accounting.

As the Tax Court said, the raising of livestock was taxpayer's principal business. While it deducted its overhead expenses on the cash basis, this is not inconsistent with the accrual method of accounting. In fact, it must be conceded that the major items of cost with respect to the raising of cattle were accrued. One cannot be on the cash basis where major items of cost are accrued. In short, we think it is clear that the inventory method was the method employed by the taxpayer in accruing its major items of cost and to determine its income from its primary activity.

Neither do we think that Glenn v. Kentucky Color and Chemical Company, 6 Cir., 186 F.2d 975, 977, on which the taxpayer places heavy reliance requires a contrary conclusion. In that case the trial judge had held that the taxpayer's system of bookkeeping fairly and honestly reflected its income "*with only minor deviations*"[1] upon the cash receipts and disbursements basis. The appellate court merely held that the *undisputed facts* supported this finding. Such is not the case here. Here inventories were used in a very substantial manner.

The second question relates to the right of the taxpayer to take advantage of the carryback of operating loss and excess profits credit provisions of the statute. Section 122(b) (1) of the 1939 Code, 26 U.S.C.A. § 122(b) (1), provides: "If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carryback for each of the two preceding taxable years * * *." And Section 710 (c) (3) (A) of the 1939 Code, 26 U.S.C. A. Excess Profits Taxes, § 710, page 108, provides: "If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits

1. Emphasis supplied.

credit, such unused excess profits credit shall be an unused excess profits credit carry-back for each of the two preceding taxable years * * *."

Taxpayer seeks the benefits of these provisions under the following facts. It began liquidation of the corporation on August 15, 1945, by transferring substantially all of its assets to the sole shareholder. Thereafter it did no business except pay a few debts and carry on the instant law suit. For the 7½ months in 1945 in which it operated its business it showed a net operating loss on the cash basis of $337,671.38. It attempts to carry back this operating loss and corresponding excess profits credits to the year 1943.

The evidence showed that petitioner made sales of livestock, in the first 7½ months of 1945 in the amount of only $878.50 and that virtually all of its sales of livestock are customarily made between September 1 and December 31 of each year. It may be presumed that had petitioner continued business throughout the remainder of the year and made normal sales it would have shown a net profit or at least a very greatly reduced loss.

The Commissioner contends that the carryback provisions never contemplated relief to taxpayers in this particular situation. In support of this position we are cited to statements in the legislative history showing that Congress in the passage of these two sections had in mind hardship cases and relief from true economic loss.

■ Petitioner's president and sole shareholder testified to various business reasons of liquidating at the time it did, including the uncertainty of business conditions at the end of the war, double taxation of corporate profits and the benefits of dealing with purchasers of cattle and creditors as an individual; but he admitted that he had tax benefit considerations in mind when he picked the time at which to liquidate. Since he was a certified public accountant of vast experience, it may be inferred that these benefits were important in his considerations in liquidating the corporation which belonged to him alone. But in our view such motives have no place in considering the question presented for our determination. It is too well settled to need citation of authorities that it is no offense nor it is reprehensible to avoid the attachment of taxes. One may employ all lawful means to minimize taxes. Petitioner takes the position the statute is clear and unambiguous and that the words thereof should be given the clear meaning which they import. No cases are cited having the identical factual situation presented here. However, there are cases which have considered this statute. In Wier Long Leaf Lumber Co. v. Commissioner, 5 Cir., 173 F.2d 549, the carryback provision was considered as applying to a corporation in liquidation but continuing in business. The court refused to go behind the wording of the statute to an examination of legislative history. In Mesaba-Cliffs Mining Co. v. Commissioner, 6 Cir., 174 F. 2d 857, the almost identical words of the carry-over of excess profits credits were said to be entirely clear and unambiguous, and it was held that they should be read in their natural and ordinary sense.

■■ It is certainly true that this petitioner has taken the maximum advantage of this situation taxwise, and this was probably a situation never contemplated by Congress. But as said by the Supreme Court in Lewyt Corp. v. Commissioner, 349 U.S. 237, 240, 75 S. Ct. 736, 739, 99 L.Ed. 1029, "where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall." When Congress passes an act in language that is clear and unambiguous, and construed and read in itself can mean but one thing, the act must be judged by what Congress did and not by what it intended to do.

We affirm the Tax Court in its finding and determination that the taxpayer was at all times on the accrual basis of accounting for income tax purposes, but we think it erred in denying the taxpayer the benefits of the carry-back of the excess profits credit provision of the statute and the net operating loss for 1945. The conclusions we have reached make it necessary to reconsider the benefits, if any, to which the taxpayer may be entitled under the carry-back provisions of the statute by virtue of our holding that it is not entitled to deduct the item of interest as a cash item in the year in which the interest was paid. The decision appealed from is, therefore, vacated and the cause is remanded to the Tax Court for its further consideration of the taxpayer's additional tax liability, if any.