*Decisions will be entered under Rule 50.*

HI-PLAINS ENTERPRISES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7923–70. Filed April 30, 1973.

*Howard A. Spies* and *Barney J. Heeney, Jr.*, for the petitioner.
*Edward G. Lavery*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in the corporate income tax of petitioner for the taxable years 1966, 1967, and 1968 as follows:

| Year | Deficiency |
|------|-----------|
| 1966 | $2, 186. 81 |
| 1967 | 62, 521. 69 |
| 1968 | 279, 192. 96 |
| Total | 343, 901. 46 |

This case concerns the method of accounting employed by petitioner for tax purposes. The entire amounts of the deficiencies are in dispute.

### FINDINGS OF FACT

Some of the facts are stipulated and are so found.

Hi-Plains Enterprises, Inc., is a Kansas corporation, organized March 1, 1966, which owns and operates a feedlot located in Leoti, Kans., its principal place of business at all times. Petitioner filed U.S. Corporation Income Tax Return Forms 1120 for the taxable years ending December 31, 1966, and December 31, 1967, with the district director of internal revenue at Wichita, Kans.; the return for the taxable year ending December 31, 1968, was filed with the director of the In-

ternal Revenue Service Center at Austin, Tex. These returns were filed on a cash basis.

There were no receipts from feeding operations in the initial short taxable year. In the ensuing taxable years, petitioner deducted currently the cost of feeding livestock, both that owned by petitioner and that owned by customers. All the livestock owned by petitioner was held for sale and petitioner took inventories of its livestock. Petitioner departed from the strict cash basis in returning its income by computing gross profit by adding to gross receipts the value of livestock on hand at the end of the year and by subtracting therefrom along with other costs the value of livestock on and at the beginning of the year.

Petitioner adopted the accrual method of accounting when it was organized and has continued to employ this method since then. Quarterly reports filed with the Securities and Exchange Commission and periodic reports distributed to stockholders are prepared on the accrual method. The accrual method was adopted because petitioner believed this was required by the Securities and Exchange Commission. In order to file cash basis income tax returns, petitioner employs the accounting firm of Elmer Fox & Co. to prepare working papers to reverse accruals shown on the corporate books and to prepare tax return Forms 1120 therefrom.

Though owned by petitioner, the working papers are retained by Elmer Fox & Co. at its business offices in Wichita, where the district director of internal revenue is located. These documents were made available to the revenue agents there. The corporate books are physically located at Leoti, Kans., and they are examined and audited there by the accountants.

The function of a feedlot is to finish cattle for sale to meatpackers. Petitioner generally receives 700-to-800-pound steers and fattens them to a weight of 950 to 1,100 pounds. The finishing process requires between 120 to 140 days. The capacity of petitioner's feedlot was 12,000 head of cattle until the summer of 1968, when the capacity was increased to 24,000 head. During the taxable years in issue, petitioner owned 70 acres of land on which it constructed feeding pens and another 10 acres of native pastureland.

Petitioner's feedlot is a commercial operation. Customers who entrust livestock to it are charged at a rate determined by computing the actual per-ton cost of feed consumed, to which is added a markup of $3.50 to $5 per ton to cover expenses. There is also a daily yardage fee of $0.05 per head. In return for these charges petitioner custom feeds and cares for the steers, provides veterinary and sanitary services, and finds a buyer for the steers at the completion of the finishing process.

Generally petitioner has itself owned half the livestock occupying the feedlot at any given time. The proportion of petitioner's livestock to the total has varied considerably, as the following head count from the first 2 years of operation reveals:

| Year | Quarter ending | Livestock owned by: | | Total livestock |
| | | Petitioner | Customers | |
| --- | --- | --- | --- | --- |
| 1967 | Mar. 31 | 5,122 | 404 | 5,526 |
| 1967 | June 30 | 4,913 | 1,746 | 6,659 |
| 1967 | Sept. 30 | 4,758 | 4,003 | 8,761 |
| 1967 | Dec. 31 | 6,350 | 6,156 | 12,546 |
| 1968 | Mar. 31 | 5,161 | 5,635 | 10,796 |
| 1968 | June 30 | 7,117 | 7,032 | 14,149 |
| 1968 | Sept. 30 | 7,662 | 9,897 | 17,559 |
| 1968 | Dec. 31 | 5,821 | 16,888 | 22,709 |

Leoti, Kans., is approximately 280 miles from Wichita. In the preparation of the 30-day letter sent to petitioner, the revenue agent relied upon the documents available in Wichita only. The letter explained that it was "the IRS' position that Hi-Plains cannot use the cash basis for tax purposes" and that the adjustments made to petitioner's income in order to adjust the tax return "from the cash basis back to the accrual basis" referred to the information petitioner supplied in its returns on Schedule M–1 of Form 1120. Schedule M–1, the reconciliation of income per books with income per return, summarized the working papers prepared by Elmer Fox & Co. The statutory notice was to the same effect. The Commissioner simply reversed the adjusting entries on Schedule M–1; the most significant of these was the entry for feed purchased, which was an inventory item on the corporate books but a current deduction on the return. The adjustments in the 30-day letter and in the statutory notice put petitioner's tax accounting on the strict accrual basis, and had the following effect on petitioner's taxable income and loss for the years before us:

| Year | Taxable income (loss) | |
| | Shown on return | Shown on statutory notice |
| --- | --- | --- |
| 1966 | ($74,674.39) | $12,365.57 |
| 1967 | (235,658.37) | 183,933.00 |
| 1968 | 0 | 586,319.15 |

OPINION

The Commissioner contends that petitioner is not a farmer within the meaning of the Income Tax Regulations dealing with methods of accounting and should be treated for accounting and reporting purposes like an ordinary commercial enterprise. He concludes that petitioner is required to compute its income under the accrual method, that is, the basis on which it regularly computes its income in keeping its

books. Sec. 446(a).[1] The Commissioner further contends that merchandise held for sale is a material income-producing factor in petitioner's business and consequently that inventories at the beginning and at the end of each year are necessary in order to reflect taxable income correctly. Sec. 1.471–1, Income Tax Regs. An accrual basis return is indicated on this ground also, in view of the relatedness of inventories and the accrual method of accounting. Sec. 1.446–1(c) (2) (i), Income Tax Regs.; *Diamond A Cattle Co.* v. *Commissioner*, 233 F. 2d 739, 741 (C.A. 10, 1956).

The key to this case is the proper method of accounting for the cattlefeed used in petitioner's operation. Petitioner already takes inventories of its livestock. The Commissioner is contending that the feed in and of itself also is petitioner's stock in trade. The disallowance as a current deduction of petitioner's actual outlays for feed is the largest item contributing to the deficiencies before us.

Petitioner contends that a feedlot is a farm and that petitioner is a farmer for purposes of the accounting regulations and therefore that petitioner is entitled to certain of the accounting and tax privileges available to farmers. First, a farmer has the option to make its returns on the cash receipts and disbursements method even though it may keep its books on the accrual basis. Sec. 1.471–6(a), Income Tax Regs.;[2] *W. Cleve Stokes*, 22 T.C. 415, 424 (1954); *United States* v. *Chemell*, 243 F. 2d 944 (C.A. 5, 1957). Second, the purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay. Sec. 1.162–12(a), Income Tax Regs.;[3] *United States* v. *Catto*, 384 U.S. 102, 106 fn. 6 (1966); *Spitalny* v. *United States*, 430 F. 2d 195 (C.A. 9, 1970), reversing 288 F. Supp. 650 (D. Ariz. 1968). However, a farmer that keeps books on the accrual method must use inventories of live-

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

[2] Sec. 1.471–6 Inventories of livestock raisers and other farmers.

(a) A farmer may make his return upon an inventory method instead of the cash receipts and disbursements method. It is optional with the taxpayer which of these methods of accounting is used but, having elected one method, the option so exercised will be binding upon the taxpayer for the year for which the option is exercised and for subsequent years unless another method is authorized by the Commissioner as provided in paragraph (e) of § 1.446–1.

[3] Sec. 1.162–12. Expenses of farmers.

(a) *Farms engaged in for profit.* A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. The cost of ordinary tools of short life or small cost, such as hand tools, including shovels, rakes, etc., may be deducted. The purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay, * * *.

stock held for sale. Sec. 1.61–4(b), Income Tax Regs.[4] Cf. *W. P. Garth,* 56 T.C. 610, 621 (1971). It is apparent that petitioner's returns were prepared with sections 1.61–4(b), 1.162–12(a), and 1.471–6(a), *supra,* in mind.

If petitioner is not a farmer, then it is undoubtedly proper for the Commissioner to hold petitioner to the strict accrual method of reporting, just like an ordinary business that keeps its books and records on that basis. Thus the issue is squarely joined, and we think the authorities point to the conclusion that petitioner should be classed as a farmer for tax accounting purposes. Cases like *W. P. Garth, supra,* and *United States* v. *Chemell, supra,* tell us that the definition of the term "farm" for our purposes herein can be found in section 1.61–4(d), Income Tax Regs.[5] Those two cases held respectively that an integrated poultry business and a poultry hatchery business are farms. *W. Cleve Stokes, supra,* held that a nursery was a farm under the regulation. The breadth of the definition cannot be denied.

As for feedlots, the Commissioner has held that such constitute farms for purposes of section 3121(g), chapter 21 of subtitle C (Federal Insurance Contributions Act). Rev. Rul. 60–115, 1960–1 C.B.

---

[4] Sec. 1.61–4. Gross income of farmers.

(b) *Farmers using an accrual method of accounting.* A farmer using an accrual method of accounting must use inventories to determine his gross income. His gross income on an accrual method is determined by adding the total of the items described in subparagraphs (1) through (5) of this paragraph and subtracting therefrom the total of the items described in subparagraphs (6) and (7) of this paragraph. These items are as follows:

(1) The sales price of all livestock and other products held for sale and sold during the year;

(2) The inventory value of livestock and products on hand and not sold at the end of the year;

(3) All miscellaneous items of income, such as breeding fees, fees from the rent of teams, machinery, or land, or other incidental farm income;

(4) Any subsidy or conservation payments which must be considered as income;

(5) Gross income from all other sources;

(6) The inventory value of the livestock and products on hand and not sold at the beginning of the year; and

(7) The cost of any livestock or products purchased during the year (except livestock held for draft, dairy, or breeding purposes, unless included in inventory).

All livestock raised or purchased for sale shall be added in the inventory at their proper valuation determined in accordance with the method authorized and adopted for the purpose. Livestock acquired for draft, breeding, or dairy purposes and not for sale may be included in the inventory (see subparagraphs (2), (6), and (7) of this paragraph) instead of being treated as capital assets subject to depreciation, provided such practice is followed consistently from year to year by the taxpayer. When any livestock included in an inventory are sold, their cost must not be taken as an additional deduction in computing taxable income, because such deduction is reflected in the inventory. See the regulations under section 471. * * *

[5] Sec. 1.61–4(d). *Definition of "farm".* As used in this section, the term "farm" embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms; also plantations, ranches, and all land used for farming operations. All individuals, partnerships, or corporations that cultivate, operate, or manage farms for gain or profit, either as owners or tenants, are designated as farmers. * * *

396. That conclusion necessarily applies to chapters 23 and 24 of subtitle C as well, due to the cross-references therein to section 3121(g). The Commissioner has held that a feedlot is a farm for purposes also of section 6420, relating to payments for gasoline used on farms.

The Kansas legislature, in connection with the enactment of laws dealing with the regulation and licensing of commercial feedlots, has defined the feeding of livestock as an agricultural pursuit. Sec. 47-1502, Kans. Stat. Ann. (1964).

We have found only one dissent, *Weed* v. *Monfort Feed Lots, Inc.*, 156 Colo. 577, 402 P. 2d 177 (1965), holding that a feedlot is not a farm exempt from the Colorado ton-mile tax. We prefer to follow the consensus.

The Commissioner makes some argument that the accountants' adjusting entries, etc., were kept in their offices, belonged to the accountants, and cannot be taken to be part of petitioner's books because not kept at the same place as the petitioner's basic books. We think this argument to be without merit. The accountants testified that the results of their work were made available on request. The Commissioner's audit personnel never had any trouble, except possibly a little travel, in making audits. No agent was called as a witness and we think, on the basis of the record before us that the accountants' adjusting entries are properly part of petitioner's books and records. *St. Luke's Hospital, Inc.*, 35 T.C. 236 (1960).

On the basis of this record we hold that petitioner was a farmer; as such petitioner had the option of filing returns on a cash basis; that it did so for the years in question, the first years of its existence, and that it properly did so.

Accordingly,

*Decision will be entered for the petitioner.*