T.C. Memo. 1998-84

UNITED STATES TAX COURT

WARD AG PRODUCTS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4508-95.                    Filed February 26, 1998.

<u>Frank R. Keasler, Jr.</u>, for petitioner.

<u>William R. McCants</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's income tax of $173,261 for its taxable year ending
October 31, 1990, and $123,873 for its taxable year ending
October 31, 1992.[1]

_____

    [1] Respondent determined that petitioner must use the accrual
                                        (continued...)

Petitioner sold seeds, fertilizer, and other supplies to farmers during the years in issue. Petitioner's owner provided advice and some financial assistance to petitioner's customers. The issue for decision is whether respondent committed an abuse of discretion in determining that petitioner must use the accrual method of accounting during the years in issue. To decide this, we must decide:

1. Whether petitioner's purchase and sale of merchandise was a material income-producing factor in 1990 and 1992. We hold that it was.

2. Whether petitioner qualifies as a farmer for purposes of using the cash method of accounting for 1990 and 1992. We hold that it does not.

3. Whether respondent's determination was an abuse of discretion because, in determining that petitioner's use of the cash method did not clearly reflect income, respondent compared only 3 years of petitioner's income under the cash and accrual methods of accounting. We hold that respondent need not have considered more than the 3 years in issue.

Thus, we hold that petitioner must use inventories and the accrual method of accounting for 1990 and 1992.

---

[1](...continued)
method of accounting for 1990, 1991, and 1992 and that petitioner had a deficiency in income tax for 1990 and 1992. Respondent determined that petitioner overpaid tax for 1991.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect in the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## I. FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner is a Florida corporation the principal place of business of which was in St. Augustine, Florida, during the years in issue and when it filed the petition.

A. Robert E. Ward, Jr.

Robert E. Ward, Jr. (Ward), was raised on a dairy farm in Eufala, Alabama. He attended Auburn University. He was married around 1962. He and his family moved from Eufala to Hastings, Florida, in 1965. In Hastings, he worked as a sales representative for an agricultural chemical company. In 1975, Ward decided to start his own business of selling supplies to farmers, in part because he had become close to the farmers there. Ward began by selling fertilizer from the back of a truck. He did not have an office for the first 3 years. Ward borrowed money to keep his business going.

Ward's son, William David Ward (W.D. Ward), began to work for Ward in 1983. W.D. Ward was petitioner's warehouse manager.

Ward and his family owned an interest in a farm in Alabama.

B.    Petitioner

Ward incorporated his business (petitioner) in 1986.  Ward bought a building for petitioner around 1988 and remodeled it.

Petitioner sold seeds, herbicides, fertilizers, and pesticides to farmers in the Hastings, Florida, area.  Petitioner also sold farm hardware, tools, and implements.  The vast majority of payments that petitioner received were from the retail sale of farming products to farmers.

Most of petitioner's customers grew potatoes.  Some grew corn or cotton.  Petitioner's customers could not always pay currently for their purchases from petitioner.  Customers paid interest to petitioner on their unpaid accounts.  Petitioner often required its customers to sign written contracts which gave petitioner a lien against the farm or other assets.  Those contracts provided a security interest to petitioner in both the current crop and crops to be grown in the future on specified real property.  The contracts typically provided that the collateral was not subordinate to other loan agreements.  Petitioner's customers sometimes provided land as collateral.

One of petitioner's suppliers from 1986 to 1993 was Lykes Agri Sales.  It sold about $400,000 of merchandise on credit to petitioner for each growing season (i.e., two or three times per year).  Petitioner sold the merchandise to its customers.  Petitioner gave Lykes Agri Sales a security interest in

petitioner's accounts receivables and inventory.  Lykes Agri Sales never foreclosed on petitioner.

Petitioner did not own any farm land.

C.  Ward's Relationship With Petitioner's Customers

1.  Ward's Expertise

Ward spent much of his time with farmers in the Hastings area.  Petitioner's customers valued Ward's expertise and greatly respected him.  They sought and relied on his advice.  They sometimes called him at night at his home to ask for help.  He was knowledgeable, helpful, and concerned about their problems. Ward visited his customers' farms daily, inspected their soil and crops, took leaf and soil samples, and advised them about fertilizers, herbicides, and pesticides.  He showed his customers how to apply the chemicals.  Ward charged for testing soil samples but he did not charge for advice.

2.  Ward's and Petitioner's Financial Assistance to Farmers

Ward often gave financial assistance to farmers.  Many farms in the Hastings area were heavily mortgaged during the years at issue.  Harvest and market conditions in the Hastings area fluctuated greatly during the years in issue.  Ward sometimes cosigned notes for farmers and lent them money.  He often gave farmers credit because they could not pay for merchandise.

Ward borrowed money from a bank to pay for the merchandise that he ordered for the farmers.  He deposited the borrowed money

in petitioner's checking account and used it to pay petitioner's suppliers. Petitioner paid interest on its loans from banks. Petitioner did not execute notes to any of its suppliers.

Petitioner had about four major competitors in the Hastings, Florida, area which sold the same products as petitioner and extended credit to their customers. However, unlike petitioner, they did not visit their customers on their farms or offer credit terms as flexible as petitioner's.

Many of the farmers in the Hastings area believed they would not have been able to survive in farming without Ward's help. Ward gave personal assistance to many farmers when they faced severe financial problems. Roger McDonald (McDonald) was a young farmer who at one time had no money to buy seed or fertilizer. He asked Ward for help around 1986 or 1987. Ward borrowed money to buy seed and fertilizer for McDonald and to provide an income for McDonald and his son and obtained contracts for McDonald to sell his potatoes.

Jack Lee (Lee) was a farmer who needed money in the early 1990's. Ward went to another farmer named William W. Wells (Wells) and asked him to help Lee. Ward and Wells obtained contracts for Lee's crops and advanced a salary to Lee and his son.

Robert Larry Byrd and William Randolph Byrd II owned a farm where they grew potatoes and corn. At a time not described in

the record, no one but Ward was willing to extend credit to them. Ward did not require them to provide collateral.

Around 1986 or 1987, Major Thomas (Thomas) was a cabbage farmer who owed Ward some money. Ward helped Thomas to obtain financing by signing a bank note with Thomas.

Charles C. Owen, Jr., and a Mr. Parker owned farms. At a time not specified in the record, they could not pay their bills to petitioner. Ward helped them to obtain financing by signing a note (not otherwise described in the record) with Owen and Parker Farms.

Around 1993, Ward told Wells that a farmer named Morgan owed money to Ward but that Morgan did not have enough equipment to operate his farm. Ward asked Wells to use Wells' equipment to plant potatoes on Morgan's land so that Morgan could repay Ward. Ward furnished all of the chemicals and advanced a salary to Morgan. Wells and Ward operated the harvester. Wells agreed to help Morgan because Ward had done a lot for Wells. Morgan did not pay Wells for his help. Ward and Wells also helped two other unnamed farmers at times not described in the record.

Ward died on September 12, 1994. Most of the farmers in the Hastings area attended his funeral.

D. Petitioner's Financial Statements and Tax Returns

1. Financial Statements

Petitioner used the cash method of accounting for its income tax returns and some of its financial statements. Petitioner

also used the accrual method of accounting for financial statements.

Robert Grady (Grady), petitioner's certified public accountant, reconciled petitioner's accounts at the end of each year. He also prepared petitioner's general ledgers, balance sheets, and adjusting transactions. Grady used the accrual method of accounting to prepare financial statements which petitioner used to track its financial position for each farmer and growing season.

2. Tax Returns

Petitioner used a taxable year ending on October 31 for the years at issue.

Grady prepared petitioner's income tax returns. Petitioner used the cash method of accounting on its Federal income tax returns before and during the years in issue. Petitioner reported opening and closing inventories to calculate costs of goods sold on its tax returns and reported that it had accounts receivable and accounts payable. Petitioner reported that it had gross income of more than $3 million per year for the years in issue. Petitioner reported that all of its income was from selling farm supplies and equipment, except it reported that it received less than $140,000 per year in interest income and less than $300 per year in commissions. Petitioner did not report that it received any income from selling crops or farming.

Petitioner's costs of sales were $2,752,954.45 for taxable year 1990 (74.83 percent of sales), $3,200,223.61 for taxable year 1991 (86.98 percent of sales), and $3,203,800.05 for taxable year 1992 (81.91 percent of sales).

Petitioner used the accrual method of accounting on its Florida sales tax returns. More than 95 percent of petitioner's sales were exempt from Florida sales tax.

E. Sale of Petitioner

Ward sold petitioner to United Agri Products, Inc. (UAP), on August 18, 1994. As part of the negotiations, petitioner gave UAP financial statements and documents which showed the amount of petitioner's accounts receivable, accounts payable, and inventories.

W.D. Ward worked for UAP after the sale. Ward's wife later paid UAP about $70,000 because UAP could not collect some of petitioner's accounts receivable.

F. Comparison of Petitioner's Income Under the Cash and Accrual Methods of Accounting

Petitioner's taxable income under the cash method of accounting was $130,390 for 1990, $76,384 for 1991, and ($61,782) for 1992. Petitioner's taxable income under the accrual method of accounting was $497,288 for 1990, $37,081 for 1991, and $364,332 for 1992.

## II.  OPINION

A.  Contentions of the Parties and Background

Respondent determined and contends that petitioner must use the accrual method of accounting for its taxable years ending October 31, 1990, 1991, and 1992.  Respondent contends that petitioner must use inventories because petitioner's purchase and sale of merchandise is an income-producing factor.

Petitioner contends that its inventories are de minimis and contends that it qualifies under section 448(b)(1), which permits farmers to use cash accounting.

B.  Whether Petitioner's Purchase and Sale of Merchandise Was an Income-Producing Factor

Respondent contends that the purchase and sale of merchandise was a substantial income-producing factor for petitioner.  We agree.

A taxpayer generally must use the accrual method of accounting with regard to purchases and sales if it must use inventories.  Sec. 471;[2] sec. 1.446-1(c)(2)(i), Income Tax Regs.[3]

---

[2] Sec. 471 provides in pertinent part:

SEC. 471(a).  General Rule.--Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

[3] Sec. 1.446-1(c)(2), Income Tax Regs., provides in part:
(continued...)

A taxpayer must use inventories if the production, purchase, or sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs.[4]

Petitioner sold seed, fertilizer, pesticides, herbicides, and farm hardware. The purchase and sale of merchandise was a substantial income-producing factor for petitioner; nearly all of its income was from the sale of merchandise. See <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 790 (11th Cir.

_____

[3](...continued)
        (2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

        (ii) No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. * * *

[4] Sec. 1.471-1, Income Tax Regs., provides in part:

        Need for inventories.--In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale * * *. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. * * * A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected. * * *

1984) (newsprint and ink which cost 17.6 percent of the taxpayer's total receipts were a substantial income-producing factor).

Ward provided many services to petitioner's customers in connection with selling farm products to them. However, businesses that provide both services and merchandise may be required to use inventories. Knight-Ridder Newspapers, Inc. v. United States, supra at 790 n.16; Fred H. McGrath & Son, Inc. v. United States, 549 F. Supp. 491 (S.D.N.Y. 1982) (funeral services); sec. 1.471-1, Income Tax Regs.

We conclude that buying and selling merchandise was a substantial income-producing factor for petitioner.

C.  Whether Petitioner Qualified as a Farmer for Purposes of Using the Cash Method of Accounting

A farming business may use the cash method of accounting to compute its taxable income. Sec. 448(b)(1). Petitioner contends that it qualifies as a farming business because it was significantly involved in the growing process and bore a substantial risk of loss from the growing process. Maple Leaf Farms, Inc. v. Commissioner, 64 T.C. 438, 448 (1975). We disagree.

For purposes of section 448(b)(1), the "farming business" is the trade or business of farming. Secs. 263A(e)(4), 448(d)(1)(A). A taxpayer is a farmer if it cultivates, operates, or manages a farm for profit, either as owner or tenant. See

Maple Leaf Farms, Inc. v. Commissioner, supra at 447-448
(defining a farm); secs. 1.61-4(d),[5] 1.175-3,[6] Income Tax Regs.
A corporation that cultivates, operates, or manages a farm for
profit is a farmer.  Maple Leaf Farms, Inc. v. Commissioner,
supra at 447; sec. 1.61-4(d), Income Tax Regs.

Petitioner did not cultivate, operate, or manage a farm for
profit as an owner or tenant.  Ward regularly visited farms and
gave advice and financial help to farmers.  However, neither
petitioner nor Ward operated a farm as an owner or a tenant.
Petitioner's business was merchandise sales, not farming.

Petitioner contends that it was as involved in farming as
any Hastings farmer.  Petitioner also contends that it bore a

---

[5] Sec. 1.61-4(d), Income Tax Regs., provides in part:

(d)  Definition of "farm".  As used in this
section, the term "farm" embraces the farm in the
ordinarily accepted sense, and includes stock, dairy,
poultry, fruit, and truck farms; also plantations,
ranches, and all land used for farming operations.  All
individuals, partnerships, or corporations that
cultivate, operate, or manage farms for gain or profit,
either as owners or tenants, are designated as farmers.
* * *

[6] Sec. 1.175-3, Income Tax Regs., provides in part:

A taxpayer is engaged in the business of farming if he
cultivates, operates, or manages a farm for gain or
profit, either as owner or tenant.  For the purpose of
section 175, a taxpayer who receives a rental (either
in cash or in kind) which is based upon farm production
is engaged in the business of farming.  However, a
taxpayer who receives a fixed rental (without reference
to production) is engaged in the business of farming
only if he participates to a material extent in the
operation or management of the farm. * * *

substantial risk from farming because it (or Ward) lent money to farmers and petitioner often sold items on credit to its customers. We agree with petitioner that, to be a farmer, the taxpayer must have participated to a significant degree in the growing process and borne a substantial risk of loss from that process. Maple Leaf Farms, Inc. v. Commissioner, supra at 448. However, petitioner does not meet that standard because it did not bear a substantial risk of loss from farming. Farmers had no recourse if their crops failed or the market for their crops was poor. Petitioner had liens, collateral, security interests, and other rights and protections that farmers did not have. Petitioner's liens and other security were not limited to the current crop.

Petitioner contends that it had more than $600,000 in uncollected accounts receivable when it was sold in August 1994. Petitioner provided no details about those accounts. Even if petitioner had $600,000 in uncollected accounts, the nature of its risk was not like that of a farmer for the reasons stated in the previous paragraph.

Petitioner contends that we should not consider the fact that it had liens or other security interests because its customers were 100-percent mortgaged and petitioner's claims were subordinated to those mortgages. We disagree. There is only vague and general testimony that all of petitioner's claims were

subordinated or that all of its customers were 100-percent mortgaged.

Petitioner contends that Ward farmed at least three times when he helped Morgan and two other farmers. However, there is no evidence that either Ward or petitioner received any income from those activities.

Petitioner contends that it was as much a farmer as the taxpayer in Maple Leaf Farms, Inc. v. Commissioner, supra. We disagree. The taxpayer in Maple Leaf Farms grew some ducklings and also paid others to grow ducklings. It selected and bought ducklings and their feed and medicine. Id. at 448. It owned all of the ducks, feed, and medicine it and its growers used. Id. It set standards for the growers who grew the ducklings. Id. at 448-449. It provided fire insurance, feed, and medicine for the ducklings. Id. at 450. We concluded that the taxpayer was a farmer. Id. at 448. In contrast, petitioner did not keep title to the seed, fertilizer, or pesticides; it sold merchandise to farmers. Thus, petitioner is unlike the taxpayer in Maple Leaf Farms, Inc. See Estate of Wallace v. Commissioner, 965 F.2d 1038, 1046-1047 (11th Cir. 1992), affg. 95 T.C. 525 (1990) (taxpayer who lacked control of the management and operations and had limited liability for cattle-feeding losses, and did not work on feedlot, hire or fire employees was not a farmer under sec. 446); compare Hi-Plains Enters., Inc. v. Commissioner, 496 F.2d 520, 523 (10th Cir. 1974), affg. 60 T.C. 158 (1973), in which the

Court of Appeals indicated that a grain elevator or feed store that sells grain or feed to farmers, and that has no control or management of the farm operation, does not qualify as a farm or farmer).

Petitioner cites several other cases which it contends support its position that it is a farmer. However, in none of these cases were the taxpayers in the business of making retail sales to farmers. The taxpayers owned or operated a cattle-feeding or feed lot business in Frysinger v. Commissioner, 645 F.2d 523 (5th Cir. 1981), affg. T.C. Memo. 1980-89; Hi-Plains Enters., Inc. v. Commissioner, supra; Packard v. Commissioner, 85 T.C. 397 (1985); and Van Raden v. Commissioner, 71 T.C. 1083 (1979), affd. 650 F.2d 1046 (9th Cir. 1981). The taxpayers raised poultry or livestock in United States v. Chemell, 243 F.2d 944 (5th Cir. 1957); Duggar v. Commissioner, 71 T.C. 147 (1978); and Maple Leaf Farms, Inc. v. Commissioner, supra.

We conclude that petitioner was not a farmer for purposes of section 448(b)(1) and sections 1.471-6(a) and 1.61-4, Income Tax Regs.

D.   Whether Respondent Should Have Compared Petitioner's Income Under the Cash and Accrual Methods for More than 3 Years

Petitioner contends that respondent's determination that it must use the accrual method of accounting was an abuse of discretion because respondent considered petitioner's income for only 3 years (1990, 1991, and 1992).

The taxpayer bears the burden of proving there has been an abuse of discretion by the Commissioner. Asphalt Prods. Co. v. Commissioner, 796 F.2d 843, 848 (6th Cir. 1986), affg. on this issue Akers v. Commissioner, T.C. Memo. 1984-208, revd. on another issue 482 U.S. 117 (1987). Taxpayers must show that the Commissioner's action was arbitrary, capricious, or without sound basis in fact. Capitol Fed. Sav. & Loan Association & Sub. v. Commissioner, 96 T.C. 204, 213 (1991); Buzzetta Constr. Corp. v. Commissioner, 92 T.C. 641, 648 (1989); Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988); Pulver Roofing Co. v. Commissioner, 70 T.C. 1001, 1011 (1978). Petitioner has not made that showing; there is no evidence that respondent's determination was arbitrary.

Petitioner contends that its total income for its 1988 to 1993 taxable years was about the same under the cash and accrual methods of accounting. Petitioner contends that from 1988 to 1993 under the cash method of accounting its total sales were $25,523,854, taxable income was $1,157,437, and income tax was $375,940. Petitioner also contends that from 1988 to 1993 under the accrual method of accounting its total sales were $25,573,570, income before taxes was $1,084,420, and its estimated income tax was $361,618. These comparisons do not establish that respondent committed an abuse of discretion. Petitioner must use the accrual method of accounting and inventories because merchandise is a material income-producing

factor for petitioner and because petitioner is not a farmer. Tax liability is based on an annual system of accounting; whether cash and accrual methods produce comparable results over a 6-year period is not controlling. See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d at 792-793; Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271 (1930).

Petitioner's reliance on Van Raden v. Commissioner, 71 T.C. at 1095-1096, is misplaced because the years chosen for audit were not an issue. Petitioner has failed to carry the burden of proving that there was an abuse of discretion by respondent.

E.  Conclusion

We conclude that petitioner does not qualify as a farmer for purposes of using the cash method of accounting and that it must use inventories. Sec. 448(b)(1); secs. 1.446-1(c)(2)(i), 1.471-1, Income Tax Regs. We also conclude that it was not an abuse of respondent's discretion to require petitioner to change from the cash method of accounting to the accrual method of accounting for the years in issue. Thus, petitioner must use the accrual method of accounting.[7]

---

[7] In light of our conclusion that petitioner must use the accrual method of accounting because merchandise is a substantial income-producing factor and because it is not a farmer, our result is not affected by the fact that: (1) Petitioner regularly used the cash method to compute its income, and (2) accrual method documents were only for petitioner's internal review and were not used for any significant purpose. Petitioner contended that some of its accounts receivable were too indefinite to be accrued. However, petitioner did not identify those accounts.

For reasons stated above,

Decision will be entered
for respondent.